The first case is appeal number 22-1874, In Re Innovate Medical, LLC. Counsel for appellant is Mr. Bahu, did I pronounce that correctly? Yes, your honor. Okay. And you reserve five minutes for rebuttal. Yes, your honor. Okay. You may proceed. May it please the court. My name is A.J. Bahu, and along with Matt Cox at counsel table, we represent Innovate Medical, LLC. Your honors, this is a case about a five-way obviousness rejection where the examiner impermissibly uses hindsight bias and improperly uses the inventor's claim as a road map to reject the element. It gathers too many disparate references to apply to this combination. Are you partially arguing that the number of references somehow means that it should not be found unpatentable, is that what you're partially arguing? Not alone, your honor, but when taken in combination and looking at the references, we will go into the details of why there's no motivation to combine. So the motivation to combine, as this court's president says in In Re Invasive, is it must be thorough in searching. The opinion from the board must state its own reasoning. It must not just mention the examiner's arguments and the appellant's arguments and then say in conclusion, we agree with the examiner. You're not saying that the board can't adopt the examiner's rationale as its own, are you? No, your honor. We're not saying that. So if they say, we agree with the examiner, they basically adopted the examiner's rationale and that should pass muster, assuming the examiner's rationale is sound. Assuming the examiner's rationale is sound, it should, but it also needs to state in the four corners of the opinion, a reason and a motivation to combine for all the references. And that's where the five becomes important because looking at Takazawa, the board failed in its effort to explain why Takazawa should be combined with any other reference. Where did you specifically argue that there was an issue with motivation to combine, Takazawa? Yes, your honor. So we argued it at three different spots. Weren't those just generally, we don't agree that there is motivation to combine? Was there anything specific to Takazawa? Yes, your honor. Turning to A872 through 77.  Yes, your honor. So throughout the pages here, there's an argument to the office that there should be no motivation to combine all five references, including Takazawa. For example, on A877, heading B, planar 1, planar 2, Kunin, Takazawa, and 1. I see that you listed it, but what do you say is specifically the problem or the failing regarding Takazawa? Because the argument you're facing in part is you forfeited this argument. Yes, your honor. With regard to Takazawa turning to A75, Takazawa's just- A75 or 75? A as in alpha 75. Yes, your honor. Takazawa is opposite of the teachings of the 607 patent. I call them 10- Okay, but where did you argue that? Yes, your honor. We have at several places argued to the board A111. 1101, I'm sorry, 1101. So we argued to the board at the bottom of page 20 there, appendix 1100. 1100 and 1101? Yes, your honor. The argument continues on there. I'm not sure I'm seeing where you made that argument just following up on Judge Stark's question. Can you tell us where specifically on these pages you're pointing to? Yes, your honor. We argue that Takazawa discloses a backup battery 18 as a backup battery power supply. And we cite Takazawa column 4, lines 9. And we say Takazawa, unlike the 607 patent, does not characterize the backup battery as resident or mounted in the electronic apparatus. Takazawa discloses the backup battery 18 is removable. But where do you say lack of motivation to combine? That's all in a section where you're trying to argue that Takazawa doesn't even disclose the claimed element. Yes, your honor. And over on the next page, appendix 1102, the heading there, the claimed invention would not have been obvious to a person of skill in the art because the combinations of the cited reference fail to teach a valid motivation to combine the references. Maybe I'll ask his question just a little bit differently. What would you say is your best place to point us to in terms of where you made this argument on motivation to combine? I know you've got various pages you've identified to Judge Stark and I think your response to my questions. But if you could give me your best one, that would be great. Yes, your honor. I believe those three citations that we've talked about are our best statement to say that we did argue to the board that there's no motivation to combine all the references and we argued that there's no motivation to combine Takazawa. And specifically, the substance of it, as you can see, as I cited two pages back, Takazawa teaches something different than 607 patent. Takazawa, at A75, column 10, lines 60 through 64, and that's at the bottom on the right-hand column, Takazawa teaches, and this is starting at line 60, because lithium batteries are commonly used for backup batteries, backup battery 18 must be replaced when discharged. And in Takazawa, it teaches something opposite of what the 607 patent covers. So we turn now to the 607 patent and we see at A29, in figure 14, item number 338, we teach that the backup battery is trickle-charged, the backup battery from the main battery. Likewise, when we go to A39, column 14, line 7 through 9, the patent teaches that the resident backup battery must be, or may be, recharged. But what line was that again? Yes, Your Honor, that is on appendix 39, column 14, line 7 through 9. Backup battery 106 may be recharged by the electrical connection, electrically connecting the backup battery 106 with a battery assembly 16. That's important because, as taught in the object of the invention, it is focused on the fact that the main batteries, the 16A and 16B, when they're inserted, recharge the backup battery, the resident backup battery in our patent. And that's opposite of what Takazawa teaches. Your submission with respect to the resident battery is that the backup battery is resident as in it is never removed regardless? Your Honor, I don't think we'd go that far with never removed. If for some reason it's malfunctioned, it would be removed under a repair circumstances, but not under the normal use in a medical environment. You're saying repair would be all right as a purpose for removing it, but not recharging? I'm saying that repair would be understood that you would have to send it into the shop. But that would be consistent with resident, in other words, is what I'm getting at. No, Your Honor, we disagree. And so if we turn to, and this relates now, switching over from motivation combined, to the claim construction of resident. So we see that the board on A16 construed the term resident as a backup battery that may reside on a device for a length of time and being discharged and then replaced. Yes, Your Honor. Go ahead. And so what the board got wrong in its construction is, it actually got the word replaced from Takazawa. And that's wrong, and that's where the citations I've mentioned to the board. But if it malfunctions and is replaced, would that not come within your understanding of what resident means? If it malfunctions and needed to be sent into the shop... Replaced, or just replaced with a new one? Yes, Your Honor. You would still say that battery was resident on the device, right? Yes, Your Honor, we would say it's resident. So your distinction is between, it's resident if it needs to be removed for repair or malfunction, but not resident if it needs to be replaced because it's discharged. That's the distinction you're drawing? Your Honor, we recognize that if it malfunctions, it would need to be sent into the shop to be replaced. And that would be consistent with your definition of resident, as I understand what you're saying. No, Your Honor. I think what we're saying is different in that if the battery under normal operations, so we've got a mobile workstation in a medical environment, and the 607 patent teaches it's critical for the health care provider to continue that service, right? And so if the battery is getting low in our invention, this battery 16A is removed from the holster 32, and a new fresh battery 16B from figure one is inserted in the holster. During that brief amount of time where service needs to continue is the resident backup battery is providing power. And so then when you insert the new battery 16B, it recharges that resident backup battery. So under normal use in the health care environment, the point is the resident stays on there continuously, long term, until it breaks down. So again, I thought that my question was directed to exactly that distinction between something that stays resident for a long time, but ultimately may need to be replaced, versus something that stays there for a less long time in that it stays until it's discharged, and then it's recharged or replaced. That's your distinction, right? Yes, Your Honor, that is the distinction. So you're saying resident means it will take a longer time before it needs to be replaced? Yes, Your Honor, if you interpret it that way, I think that... Isn't that the way you're interpreting it? Because that's what I took away from your answer in my last question. What we're saying is that we understand that if it breaks down or malfunctions, it would need to be sent into the shop to be replaced. What is your argument that was wrong with the construction that the board adopted? Yes, Your Honor, thank you for asking. That is actually, on A-16, the board could have changed one word, and this is why it's very critical. It committed a cardinal sin of claim construction. It did not look to the 607 patent specification to interpret resident. You said it could have changed one word. Can you tell us what that one word is? Yes, Your Honor. The last word, when it says replaced, the board got that from Takazawa, which should not be used in claim construction. What should it be? It should be recharged. Based upon the citations that I've mentioned, A-75, column 10, 60 through 64, our patent teaches when our resident backup battery is discharged, it is recharged. And that is why the one word should be replaced on the claim construction. It is a cardinal sin to interpret the claim terms in a way that is inconsistent with the patent specification. Importantly as well, Takazawa teaches its electric schematic diagram. So when it discloses... You are definitely into your rebuttal time. Do you want to save some of it? Do you have any final words that you want to say before giving the other side a chance to speak? I'll reserve my time for rebuttal. Thank you. If there's no further questions... Good morning. May it please the court. Substantial evidence supports... Let me just announce to you, just if that's okay. Okay, so it's Mrs. Lateef, is that correct? Yes, Your Honor. Okay, you may proceed. Sorry about that. Thank you. May it please the court. Substantial evidence here supports the board's findings that Innovate's claims are obvious over the prior arc. And in particular with the reference that was just being discussed as it relates to Takazawa and this issue about how the word resident is construed, I think Innovate's counsel kind of answered the question for this court in the sense that Innovate's counsel admitted that the backup battery can be removed, whether it be to recharge or to be taken out for repair. If you look at the claims, there's nothing in the claims that limit it to repair or discharge. It just says the word resident, resident on a mobile workstation. And what the board said was that Innovate's claim construction was too narrow to suggest that there couldn't be any removal of the backup battery. And in fact, if you look at the claim language and you look at the specification, there's nothing that says that this backup battery cannot be removed, that there's some preclusion here. There's no temporal limitation on what the word reside means. It simply means to be on the mobile workstation. And Takazawa satisfies that limitation. And so there was nothing wrong with the way that it was construed by the board. And finding that that prior art reference teaches that was the correct finding. In addition, this idea about the motivation to combine, we agree that it was, or we suggest, the board has suggested it was waived. And I just want for the court to understand if for any reason the court disagrees with that, there was a motivation to find by the examiner and the board is able to adopt that motivation under our regs. Did the board actually adopt that particular finding by the examiner? Well, the board, under the regulation 37 CFR 4150A1, any rejection that is not specifically called out as being rejected is affirmed. So to answer your question, yes, because the board basically adopts the findings of the examiner under that regulation unless they specifically say otherwise. But what if we were to find that enough was done to preserve the issue? Wouldn't that mean that Innovate did raise the issue with the board, and therefore the board can't rely on that regulation to adopt the examiner implicitly? The board would have to do something express to adopt the examiner's reasoning on this point. I'm not sure respectfully if that's correct. If they did raise that issue, which they didn't, the board could have said, and we adopt the examiner's finding. It wouldn't have had to make some extra step. They could have said, no, as the examiner said on page and then point to where the examiner found, we agree with the examiner. But they didn't even do that. The board didn't even do that here. The board didn't do that here because the issue was waived. And I get that. I think the waiver argument may be a strong one. But I guess my question is, what if we didn't find the waiver? If we weren't persuaded on that, don't we have to remand? Because I don't think you can point to anywhere the board actually says even we agree with the examiner on this point. But I don't think I have to, respectfully, Your Honor. I think if you disagree with us on the waiver, I don't think you'd need to remand for that reason. I think you can rely on the fact that the board is adopting the examiner's finding. I mean, the examiner talked about a motivation to combine in more than one location. It was repeating itself. It wasn't finding multiple motivations. But it did it on several different pages. And I feel like that's a very strong... But never does it specifically about Takazawa, right? That's... If that's right, yeah, show us. Yeah, if you start, if you could please turn to APPX 1017 to 1018. I'm going to read from the bottom of 1017. It says, to that end, a person of ordinary skill in the art would have been prompted to supply the mobile workstation with a resident backup battery to prevent data loss when both of the battery packs were discharged or disconnected. And then it goes on. That's a step of... I don't want to read the whole thing, but it's quoting. It says, such as claimed would have been obvious to those of ordinary skill in the art. That's the motivation for Takazawa. And the board said that again on APPX 1036, 1040, 1045, 1052, 1057. Slow down. I'm sorry. Can you run those by us again? Sure. Just so that we have them. Yes. So I'll start at the top. I apologize. That's all right. So the board, I mean, sorry, the examiner said it again. At 1036, 1040, 1045, 1052, 1057, 1063, and then in the examiner answer at 1161. To be clear, those are all examiner statements, not the board. Yes. I'm sorry if I misspoke. It was the examiner and the board adopting those. And it's the same statement. The board is repeat... The examiner is repeating herself. Just as a general matter, is it fair to say that the examiner's answer can do the double duty as both an answer in the litigation and also a finding by the examiner if there's no separate finding by the examiner? If there's no separate finding. In other words, if the examiner in the course of the examination never actually said, I find X, but in the examiner's answer, when an appeal is taken, says X is the case. Does that count for purposes of determining that the examiner has made a finding that the board can accept? Or that is deemed to be accepted when the board doesn't reject it? Well, for starters, I would say that didn't happen here. But I would say I think that because there's an opportunity for the applicant to respond. As I stand here today, I'm not sure there's an issue with that. Because, again, it's not as if the examiner is getting the last word in there. So there's still... Well, I understand that. But generally, if a finding is made by a hearing examiner or whatever, under the APA, and that finding is then challenged, you look to the finding in the proceeding before. You don't necessarily look to the briefing that was done in support of that finding. So my question is, in this particular situation, where it's not the agency counsel, but it's the examiner him or herself who actually writes the brief in support of the examiner's findings, is it fair to say the examiner can, for the first time, make a statement in the brief that counts as a finding by the examiner? Or does the examiner have to be... You have to look back at the rest of the examination to find such a finding? It's a long question, but I think... No, no, I understand. I'm just thinking about the answer. I want to be clear that that did not happen here. That is not the situation in this case. This was all in the examiner's final office action and then also in the examiner answer. So I want to start with that. But to answer your question, I think that it, again, because it's the examiner... I know it's weird because briefing has now been happening, but I think it's still allowable for the examiner to do that because... I looked for authority on that, didn't find anything. Well, I'm not sure, as I stand here with your hypothetical, that I have any that comes to mind. But I want to just reiterate, that is not what happened here. This was in the final office action. I also said, again, in the examiner answer, but it was in the final office action. All those sites that I read, with the exception of the last one, come from the final office action. So, again, with respect to the references being combined, there was no issue with Takazawa, there was no problem with the motivation, and under the board's proper construction of residents, Takazawa satisfies that limitation. I don't know if there are other questions about the other references. Just as a general matter, their argument seems to be that the board, if not the examiner, used the patent as a guide to, with hindsight, put together a whole bunch of references in order to invalidate their claims. What's your response just to that hindsight charge? Sure, there was no hindsight here. Under in regard side, as long as the examiner cites a reason for combining the references, that in and of itself shows that there is no hindsight. This was based on what the references were teaching, and if you look through the final office action, the examiner will identify the limitation, the combination of the references, and said it was motivated for this reason. The reason it seems disparate, because there's multiple limitations that were being argued. There were the holster limitations that had various iterations, and then there was the resident limitation. The examiner took them apart to say, here's where the references meet this, here's the motivation to combine. Here's where the references meet this limitation, here's the motivation to combine. Under in regard side, if you have the examiner stating, here are the reasons why we're combining these references, there's not a use of hindsight. Here, there was no hindsight. We didn't look through the patent to find a reason to combine the references. At the outset of your argument, you did address, I think, at least to some level, the resident construction. Could you directly address that distinction that opposing counsel was drawing with respect to repair versus recharge in terms of the resident construction that I heard today, at least? Sure. My reaction to that difference of repair versus recharge, I would just start by saying that is not something that is within the claim language. That distinction, it literally says resident on the mobile workstation. It doesn't say resident on the mobile workstation until we need to repair it. It doesn't say resident on the mobile workstation during the time of recharge. That distinction doesn't influence the construction because it's not a part of the claim language. You look to the claim language, you look to the specification, and there's nothing in there. Even the part of the spec that said may be charged by plugging in, that's a certain embodiment within the specification. It may be charged, it doesn't mean it cannot be charged any other way. There's nothing in the patent that says that that backup battery cannot be replaced. That would be my response to that. If there are no further questions, I yield my time and respectfully ask that the court affirm the board's decision. Thank you. Thank you. Any rebuttal? Yes, Your Honor. I'm going to go quickly. You asked a moment ago about a citation for the Appellant Innovate, Appendix 1094 at the top of the page. We specifically mentioned Takazawa, and we state on the fourth line, we say because a person of ordinary skill would not have been motivated to combine the references to arrive at the claimed invention. Innovate raised the issue. It's not waived. As well, I wanted to address the lingering question about resident and how it should be construed. It is our argument that it should be construed in light of the 607 patent, not in light of Takazawa, the prior art. To support that, Figure 12 at Appendix A27 shows 106. The teachings of the patent show it mounted inside a Housing 30 on the control board. That's why, if you look to this patent in 607, the construction should be changed at the one word at the end, as we talked about on Appendix 16 from the board. It should not be replaced. It should be recharged. That's what we covered in the specification. That's why the teaching, and that's why it's important to say that you cannot just take this off in ordinary use. It's mounted to a control board. Previously, you told us that it could be replaced. Under repair circumstance, yes, Your Honor. I just don't know why the term resident. You're not saying resident means it's permanently affixed to the device without any possibility or need to take it away from the device or out of the device. You're agreeing to that. Perhaps you're not. No, Your Honor. We're saying that it is permanently affixed by mounted. Right, but it could be permanently affixed by mounting, and you could take it out every week, presumably. My question really keeps coming back to the same point, which is you're not saying it's permanently resident as in it never moves. It stays there, right? We're saying that the patent teaches that it's mounted. Yes or no? You're not saying that it's stuck there for good, right? Your Honor, we are saying that it is stuck there when the term mounted and the phrase in the patent teaches that it's mounted inside a control housing, a housing that's shown here on Figure 12. But it's not always stuck there for the life of the entire structure. Until the structure finds its way into a junkyard, it'll have that same replacement battery no matter what. That's not what you're saying. That is what we're saying. If it's not malfunctioning, it is stuck there as mounted. But the if it's not malfunctioning is a major exception to the idea that it's there permanently. That's what I'm troubled by. Yes, Your Honor. Do you understand my question? I understand. I've attempted to put forth our best argument on that issue. I wanted to make one concluding comment with regard to the office's comment that the board stated its own reason it did not. And, in fact, if you look at page 51 of their brief, the citations again in the appendix are actually to the examiner's statement. So the board, we believe, failed because it didn't meet this court's precedent in ubasive to state its own reasoning. This is just on the Takazawa motivation at the bottom, right? Yes, Your Honor, and Takazawa with any of the other references as well. And the reason why that's very important is that if you look to the examiner's statement, the examiner in the first re-exam actually allowed the patent over Takazawa, claim 14, over Takazawa, plainer 1 and 2, and even had Wong in its possession in the first re-exam. That is very critical because in the record at A518, it shows that the examiner under the first re-exam had those in its possession. And then on page 519, it says, with regard to claim 14, it says here that the examiner agrees that the prior art does not teach this limitation and, as such, it's allowable. So if we're looking to the examiner, we're just comparing for the court the fact that this is the second re-exam, the four-way rejection that wasn't addressed by the board, which again is error, shows that they avoided that because the lack of motivation to combine wasn't there and they were afraid of the four-way reference because the examiner actually allowed it under the first re-exam. Thank you. Thank you, Your Honor. All right, that concludes this argument. This case is taken under submission.